IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

KANSAS PENN GAMING LLC,

        Plaintiff,
vs.                                **Case No. 08-4111-RDR**

HV PROPERTIES OF KANSAS LLC,

        Defendant.

## MEMORANDUM AND ORDER

These consolidated actions arise from the decision of Kansas Penn Gaming, LLC (KPG) to terminate a property purchase agreement with HV Properties of Kansas, LLC (HV) for the acquisition of certain parcels of land in southeast Kansas for the development of a casino. KPG seeks to dismiss HV's counterclaim against it and a separate claim against Penn National Gaming, Inc. (Penn National), its parent company. Having heard oral argument, the court is now prepared to rule.

Penn National is a Pennsylvania corporation engaged in the business of developing and operating destination gaming facilities. KPG is a limited liability company formed by Penn National for the purpose of applying for, and possibly developing and managing, a "Lottery Gaming Facility (a casino)" in Cherokee County, Kansas. HV is a Kansas limited liability company which has two general partners, Gary Hall and Stephen Vogel.

Prior to September 28, 2007, HV owned three parcels of

property situated in Cherokee County, Kansas. KPG explored the possibility of the acquisition of this property to build a casino there, provided that it could obtain the necessary approvals and, ultimately, a final and effective "Lottery Gaming Facility Management Contract" from the State of Kansas.

After some negotiation, the parties agreed to a sales contract with both fixed and contingent compensation. The contract required KPG to pay $2.5 million to HV to acquire the parcels of property. KPG has paid $2.5 million to HV. The contract further provided for KPG to pay additional compensation to HV contingent on certain events. Specifically, the contract provides that if KPG is designated and finally approved as the "Lottery Facility Gaming Manager" in the Kansas southeastern gaming zone, KPG is required to make an additional payment of $17.5 million to HV. Then, once KPG obtains any "final unappealed and unappealable permits, approvals, certificates, licenses, management contracts or other authorizations, and rezoning, special use permits and preliminary plan approvals and building permits for the construction and operation of a destination lottery gaming facility," it is required to pay an additional $20 million to HV. As part of the real estate contract, the parties entered into a repurchase agreement. This agreement provided HV with the option to repurchase the property from KPG "in the event this Contract is terminated." The repurchase agreement specifically provides HV with the option to repurchase the property

from KPG for an amount equal to the price KPG had paid to HV within 90 days following KPG's notice of termination.

On September 28, 2007, the parties closed on the real estate transaction and KPG acquired the parcels of HV. Over the next year, KPG continued its efforts to apply for designation as the Lottery Gaming Facility Manager for the southeast Kansas gaming zone. On May 5, 2008, KPG entered into a proposed management contract with the State of Kansas and continued to work to obtain the necessary contracts and permits to develop the casino. On September 11, 2008, prior to being awarded a final management contract, KPG withdrew its application to be designated the Lottery Gaming Facility Manager for the southeast Kansas gaming zone. Also on that date, KPG gave notice to HV of its determination not to proceed with the development of a casino on the HV Properties' parcels. On September 12, 2008, HV sent a notice of default to KPG, claiming that KPG's alleged breach of contract had damaged it in the amount of $37.5 million plus interest and attorney's fees. KPG filed a declaratory judgment action on September 23, 2008. HV filed an answer and counterclaim for breach of contract on October 6, 2008. Also, on October 6, 2008, HV filed a complaint for damages along with a motion to consolidate its breach of contract case with the declaratory relief case. The motion was unopposed, so the cases have now been consolidated.

KPG relies upon language contained in the repurchase

agreement, which it asserts is part of the real estate contract and should be read in harmony with it. KPG thus contends that it validly terminated an unambiguous contract and, therefore, it is entitled to dismissal of the claims alleged by HV. KPG points specifically to section 2 of the repurchase agreement, which provides as follows:

> Notice of Termination. If, after [KPG] has applied for the necessary management contracts/agreement, licenses and/or other regulatory approvals necessary for [KPG] to operate a destination lottery gaming facility under Kansas law, and [KPG], prior to being awarded a Lottery Gaming Facility Management Contract by the Kansas Gaming Authority, determines not to proceed with developing a destination lottery gaming facility on the Subject Property, [KPG] shall give [HV] written notice of such intent not to proceed (the "Notice of Termination").

HV contends that a contract existed between it and KPG which pursuant to section 13.1 required KPG to use "good faith commercially reasonable efforts" to be designated as the Lottery Gaming Facility Manager for southeast Kansas. HV further contends that the contract obligated KPG to "use good faith commercially reasonable" efforts to pursue and obtain final approvals, certificates, licenses, management contracts or other authorizations necessary to build and to operate the casino. HV asserts that KPG failed to fulfill those obligations when they unilaterally decided not to pursue final approval of the management contract or any other action necessary to build and to operate the casino.

The court will dismiss a cause of action for failure to state a claim only when the factual allegations fail to "state a claim to

4

relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), or when an issue of law is dispositive.  Neitzke v. Williams, 490 U.S. 319, 326 (1989).  The complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do.  Bell Atlantic, 550 U.S. at 555.  The court must accept the facts alleged in the complaint as true, even if doubtful in fact, id. at 556, and view all reasonable inferences from those facts in favor of the plaintiff, Tal v. Hogan, 453 F.3d 1244, 1252 (10th Cir. 2006). Viewed as such, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic, 550 U.S. at 555 (citations omitted).  The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims."  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

    The primary rule for interpreting written contracts is to discover the parties' intent. If the terms of the contract are clear and unambiguous, the parties' intent and the meaning of the contract are to be determined from the language of the contract without applying rules of construction.  Anderson v. Dillard's, Inc., 283 Kan. 432, 153 P.3d 550, 554 (2007).  "Interpretation of

5

contractual provisions should not be reached merely by isolating one particular sentence or provision, but the entire instrument should be construed and considered by its four corners." Wichita Clinic, P.A. v. Louis, 39 Kan.App.2d 848, 185 P.3d 946, 951 (2008).

The court agrees with KPG that the repurchase agreement must be considered as part of the real estate contract. The repurchase agreement is expressly incorporated into the contract and attached as "Exhibit E" to the contract. Thus, the repurchase agreement is an express part of the contract. Hammond v. Lowe's Home Centers, Inc., 316 F.Supp.2d 975, 978 (D.Kan. 2004) (under Kansas law, documents executed at the same time as part of a single transaction are construed together to determine the intent, rights and interests of the parties). However, we are not persuaded at this point that the language of section 2 of the repurchase agreement gives KPG complete discretion to terminate the contract at any time for any reason. Rather, this section must be read in harmony with section 13.1 of the sales contract which requires KPG to "use good faith commercially reasonable efforts" to obtain the final management contract from the State of Kansas for the operation of the casino. Moreover, section 13.1 stated that KPG could terminate the contract if the final management contract offered by the State of Kansas was not "reasonably acceptable" to it. The issue of whether KPG acted in accordance with the requirements of the contract in terminating it is a fact issue that cannot be resolved

on a motion to dismiss.  Accordingly, KPG's motion to dismiss must be denied.

**IT IS THEREFORE ORDERED** that Kansas Penn Gaming, LLC's motion to dismiss HV Properties of Kansas, LLC's breach of contract claim (Doc. # 10) be hereby denied.

**IT IS SO ORDERED.**

Dated this 6th day of May, 2009 at Topeka, Kansas.

>                         s/Richard D. Rogers
>                         United States District Judge