# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| KANSAS PENN GAMING, LLC | ) | |
| --- | --- | --- |
| Plaintiff, | ) | |
| v. | ) | Case No. 08-4111-RDR |
| HV PROPERTIES OF KANSAS, LLC, | ) | |
| Defendant. | ) | |

| HV PROPERTIES OF KANSAS, LLC, | ) | |
| --- | --- | --- |
| Plaintiff, | ) | |
| v. | ) | Case No. 08-4115-RDR |
| PENN NATIONAL GAMING, INC., | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the court upon HV Properties' Motion to Enforce Discovery Under Fed. R. Civ. P. 26(b)(4)(C). HV Properties seeks an order reducing the hourly rate that HV Properties must pay the opposing parties' expert witness for the time spent taking his deposition. Kansas Penn Gaming and Penn National Gaming (collectively "Penn") oppose the motion and argue the expert witness fee is reasonable. HV Properties has declined to file a reply brief, and the time to do so has passed. Accordingly, the court is prepared to rule.

**I.   Background**

The claims in these consolidated actions arise from a contract between the parties for the sale of certain parcels of land in Cherokee County, Kansas. Penn sought to create a destination lottery gaming facility (a casino) but eventually decided not to move forward with the project. HV Properties contends Penn breached the contract and is liable for the remaining balance under the

contract. Penn seeks judgment declaring that it properly exercised its contractual right to terminate the contract and has no liability to make future payments to HV Properties.

Penn has retained Hugh Steven Wilson as an expert witness who will testify about whether Penn reasonably decided not to proceed with the planned Cherokee County casino project. Mr. Wilson charges a rate of $890 per hour, which HV Properties contends is unreasonable. HV Properties sought to depose Mr. Wilson but was unwilling to pay what it considered an unreasonable fee. After the parties failed to reach an agreement regarding Mr. Wilson's fee, they decided Mr. Wilson's deposition would move forward and it would be left to the court to determine the reasonableness of Mr. Wilson's $890 hourly rate.

**II.     Discussion**

The Federal Rules of Civil Procedure govern compensation of an exert witness for time spent taking his deposition. Pursuant to Fed. R. Civ. P. 26, a party may depose any person identified as an expert witness whose opinions may be presented at trial.[1] "Unless manifest injustice would result," the party seeking discovery shall pay the expert witness a "reasonable fee for the time spent in responding to discovery."[2] There is scant authority as to what constitutes a "reasonable fee," and courts typically use their discretion to select an amount they deem reasonable.[3] Courts in this district have not adopted factors to consider when determining the reasonableness of an expert witness' fee.[4] However, as Magistrate Judge Humphreys has noted, other courts have considered the following

---

[1] *See* Fed. R. Civ. P. 26(b)(4)(A).

[2] Fed. R. Civ. P. 26(b)(4)(C).

[3] 10 JOHN KIMPFLEN, ET AL., 10 FEDERAL PROCEDURE, LAWYERS EDITION § 26:263.

[4] *See, e,g.*, *Maasen v. Zwibelman, M.D.*, No. 98-2280-JWL, 2001 WL 309116 (D. Kan. March 12, 2001) (considering reasonable expert fees under Rule 26 but not applying any factors*); Kernke v. Menninger Clinic, Inc.*, No. 00-2263-GTV, 2002 WL 334901 (D. Kan. Feb. 26, 2002) (same).

factors in making this determination:

> (1) the witness's area of expertise, (2) the education and training that is required to provide the expert insight that is sought, (3) the prevailing rates for other comparably available experts, (4) the nature, quality and complexity of the discovery responses provided, (5) the cost of living in the particular geographic area, (6) the fee being charged by the expert to the party who retained him, (7) fees traditionally charged by the expert on related matters, and (8) any other factor likely to be of assistance to the court in balancing the interests implicated by Rule 26.[5]

Because the parties' briefs have organized information based on the above-listed factors, the court will organize its analysis in the same manner. Although courts in this district have not squarely addressed this issue, other courts have found that the party seeking reimbursement bears the burden of demonstrating the reasonableness of the amount claimed.[6]

### A. The Witness' Area of Expertise & the Education and Training Required to Provide the Expert Insight that is Sought

Mr. Wilson intends to testify as to the reasonableness of Penn's decision not to proceed with the Cherokee County casino project considering Penn's duty to increase shareholder value. To that end, Penn states Mr. Wilson has worked with the boards of directors of multiple public companies in addition to advising private companies on corporate governance issues. He has served as director of a public company, a private company, and several charitable organizations, and he has practiced corporate law for more than thirty-two years with Latham & Watkins, one of the nation's largest law firms. While a partner at Latham & Watkins, Mr. Wilson served as chair of the firm's litigation

---

[5] *Harvey v. Shultz*, No. 99-1217-JTM, 2000 WL 33170885, at *1 (D. Kan. Nov. 16, 2000) (quoting *Coleman v. Dydula*, 190 F.R.D. 320, 325 (W.D.N.Y. 1999)).

[6] *See, e.g., Marin v. U.S.*, No. 06 Civ. 552(SHS), 2008 WL 5351935, at *1 (S.D.N.Y. Dec. 22, 2009) (citing *Mark Andrew of the Palm Beaches, Ltd. v. GMAC Commercial Mort. Corp.*, No. 01 Civ. 1812, 2003 WL 21767633 (S.D.N.Y. July 31, 2009) and *New York v. Solvent Chem. Co.*, 210 F.R.D. 462, 468 (W.D.N.Y. 2002)); *see also Gonzalez-Bey v. Godinez*, No. 93 C 5152, 2002 WL 1008469, at *2 (N.D. Ill. May 16, 2002) (finding that the party producing the expert had satisfied its burden of demonstrating the fee was reasonable).

department and as global co-chair of the mergers and acquisitions department. Additionally, he graduated with J.D. from the University of Chicago Law School, where he served as editor of the law review, and he received an L.L.M. from Harvard Law School.

Although HV Properties argues Mr. Wilson lacks specialized training and experience in business or financial valuation, Mr. Wilson's own expert witness report shows that he intends to testify that Penn's decision to withdraw from the Cherokee County casino project was made in accordance with good corporate governance and was commercially reasonable. To that end, the scope of Mr. Wilson's testimony exceeds a the issue of profitability of the casino project. Accordingly, Penn has provided information tending to show Mr. Wilson's experience and education required to provide his testimony favor finding the fee charged is reasonable.

B. The Prevailing Rates for Other Comparably Available Experts

Neither party provides sufficient evidence of the prevailing rates of comparably available experts. Mr. Wilson's affidavit states he arrived at his fee by contacting his former colleagues at Latham & Watkins to find out their current billing rates. Mr. Wilson's affidavit states both attorneys he contacted told him their billing rates exceed $890 per hour. Although this information may show Mr. Wilson could reasonably charge $890 per hour as a lawyer, it does not demonstrate this fee is reasonable in the context of serving as an expert witness. Penn does not state whether these Latham & Watkins attorneys have ever served as expert witnesses in comparable cases and, if so, whether they would charge the same rate they charge as practicing attorneys. Moreover, Penn does not provide the court with any information indicating that an *expert witness* with comparable qualifications to Mr. Wilson and testifying about comparable matters would charge a rate as high as Mr. Wilson charges.

4

Likewise, HV Properties fails to provide the court with the prevailing rates of comparable experts. HV Properties' counsel has provided his own affidavit which states he is unaware of any comparable expert who charges as much as Mr. Wilson. However, the examples counsel lists are not necessarily comparable to Mr. Wilson. More specifically, the affidavit focuses on "experts in the field of financial, business and economic analysis and valuation."[7] It states that economists, certified public accountants (CPAs), and other consultants charge between $250 to $450 per hour and that counsel is aware of a sophisticated national financial and economic consulting firm with a rate not exceeding $500 per hour.[8] As previously stated, Mr. Wilson's own report shows he plans to testify about matters outside the scope of valuation. He intends to testify as to the legal duties Penn owed to its shareholders, matters that a CPA or an economist would not be as qualified to evaluate.

Although HV Properties' expert charges a rate of $180 per hour, and as Penn states, "holds all the significant valuation accreditations,"[9] this expert is not properly comparable to Mr. Wilson for the same reasons. Penn's response brief states HV Properties' expert does not purport to evaluate whether Penn's decision to pull out of the casino project was commercially reasonable. Rather, Penn states this expert's testimony appears to be limited to valuation and the potential for profitability. As HV Properties declined to file a reply brief, the court is without any rebuttal argument to Penn's assertion and therefore assumes it is correct. Accordingly, this factor neither weighs in favor of nor against finding Mr. Wilson's rate is reasonable.

---

[7] Motion to Enforce Discovery Under Fed. R. Civ. P. 26(b)(4)(C) (Doc. 60), Exhibit C, Affidavit of Counsel (Doc. 60-4) at 1.

[8] *Id.*

[9] Motion to Enforce Discovery Under Fed. R. Civ. P. 26(b)(4)(C) (Doc. 60) at 4.

### C. The Nature, Quality, and Complexity of the Discovery Responses Provided

Again, neither party provides sufficient information to enable the court to evaluate this factor. HV Properties' brief never mentions this factor, and Penn's response brief focuses on the fact that HV Properties' expert did not address "big picture issues," such as the legal duties publicly traded corporations owe their shareholders. Penn does not explain why the scope of HV Properties' expert witness establishes that the nature, quality, and complexity of Mr. Wilson's testimony favors finding his $890 fee is reasonable. Therefore, this factor neither weighs in favor of nor against finding Mr. Wilson's rate is reasonable.

### D. The Cost of Living

HV Properties did not address this factor, as it cited case law from another district that did not include this factor. However, Penn admits that this factor may weigh against finding Mr. Wilson's rate is reasonable. Mr. Wilson works and resides in California. His resume provides a Los Angeles address, and the web site for Tennenbaum Capital Partners—where Mr. Wilson is a managing partner—lists a Santa Monica, California address. Although Penn argues that HV Properties has failed to come forward with evidence demonstrating the cost of living in California is higher, the court can safely rely on its own knowledge to conclude the cost of living in this area of California is indeed higher than the cost of living in Kansas, where these consolidated actions were filed. Therefore, this factor weights against finding Mr. Wilson's rate is reasonable.

### E. The Fee Being Charged by the Expert to the Party that Retained Him

Both parties state Mr. Wilson is charging Penn the same hourly fee he is charging HV Properties for his deposition testimony. Therefore, this factor weights in favor of finding Mr. Wilson's rate is reasonable.

### F. Fees Traditionally Charged by the Expert on Related Matters

HV Properties states it cannot provide any information as to this factor because Mr. Wilson has not testified as an expert witness in any case since leaving the Latham & Watkins about five years ago. Penn admits Mr. Wilson does not typically serve as an expert witness but Penn also fails to provide any information as to the fees Mr. Wilson charges as to "related matters." Instead, Penn argues that because Mr. Wilson earns more than $890 per hour through his present employment and because his hourly billable rate would likely exceed $890 per hour had he stayed at Latham & Watkins, this factor is satisfied. Although there is evidence before the court as to the nature of Mr. Wilson's present employment, the court cannot say Mr. Wilson's day-to-day business activities are a "related matter" or that the income Mr. Wilson generates from his business constitutes "fees" he typically charges. Therefore, this factor neither weighs in favor of nor against finding Mr. Wilson's rate is reasonable.

### G. Any Other Factor Likely to be of Assistance to the Court in Balancing the Interests Implicated by Rule 26

Mr. Wilson has not charged HV Properties for time spent preparing for his deposition. As Magistrate Judge Waxse noted in *Johnson v. Kraft Foods of North America*, courts in this district typically require the party conducting the deposition to pay for at least some of the opposing party's expert witness' time spent preparing for the deposition.[10] Moreover, Mr. Wilson's deposition lasted just over two-and-a-half hours. Even assuming *arguendo* that Mr. Wilson's hourly rate is on the high side, the fact that he has declined to charge HV Properties for his preparation time coupled with the fact his deposition was relatively short means Mr. Wilson will not reap a windfall from

---

[10] *Johnson v. Kraft Foods of N. Am.*, No. 05-2093-JWL-DJW, 2007 WL 734956, at *3 (D. Kan. March 7, 2007) (stating the same proposition).

7

requiring HV Properties to pay his rate, and HV Properties will not be unduly burdened by having to do so.

## H. Conclusion

The above factors weigh in favor of finding Mr. Wilson's rate is reasonable. Although Mr. Wilson's rate may be on the high side of the spectrum for what this court would consider reasonable, any reduction the undersigned would attempt to impose would be arbitrary. Neither of the parties have come forth with evidence of an appropriate rate for an expert witness with Mr. Wilson's credentials opining on similar matters. Penn has pointed out that Mr. Wilson is testifying as to the legal duties Penn would owe its shareholders, thereby undercutting many of HV Properties' arguments that focus on experts testifying solely as to profitability and valuation. HV Properties has declined to rebut this argument in a reply brief. Indeed, HV Properties' motion states that a fee of $360 per hour would be reasonable, but it does not specify how it came to this conclusion. Likewise, counsel for HV Properties had previously sent an e-mail to counsel for Penn stating that HV Properties would be willing to pay a $450 per hour, a fee "arguably on the chart."[11] HV Properties and Penn have chosen to frame their briefs around the above-described factors, and those factors favor finding Mr. Wilson's rate is reasonable. For the these reasons, HV Properties' motion is denied. It shall pay Mr. Wilson the $890 hourly fee he charges for the time spent taking his deposition.

Accordingly,

**IT IS THEREFORE ORDERED** that HV Properties' Motion to Enforce Discovery Under Fed. R. Civ. P. 26(b)(4)(C) is hereby DENIED.

---

[11] Memorandum in Opposition to HV Properties of Kansas, LLC's Motion to Compel Discovery (Doc. 66), Exhibit 2, E-mail from Brooks Woods to Christopher Tayback (Doc. 66-2) at 7.

**IT IS SO ORDERED.**

Dated this 5th day of November, 2009, at Topeka, Kansas.

                                                <u>s/ K. Gary Sebelius</u>
                                                K. Gary Sebelius
                                                U.S. Magistrate Judge