# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF KANSAS

KANSAS PENN GAMING, LLC,

        Plaintiff,

   vs.                  **Case No. 08-4111-RDR**

HV PROPERTIES OF KANSAS, LLC,

        Defendant.

_____

HV PROPERTIES OF KANSAS, LLC,

        Plaintiff,

   vs.                  **Case No. 08-4115-RDR**

PENN NATIONAL GAMING, INC.

        Defendant.

_____

## <u>MEMORANDUM AND ORDER</u>

This matter is presently before the court upon the motion of Kansas Penn Gaming, LLC (KPG) and Penn National Gaming, Inc. (Penn National) for attorneys' fees and expenses. Having carefully reviewed the motion, the court is now prepared to rule.

I.

Some background is necessary to understand the context of this motion. These consolidated actions arose from the decision of KPG to terminate a property purchase agreement with HV Properties of Kansas, LLC (HV) for the acquisition of certain parcels of land in southeast Kansas for the development of a casino. On September 23, 2008, KPG filed a declaratory relief complaint against HV seeking

a judicial determination that it had no liability to HV under the real estate sale contract.  On October 6, 2008, HV filed its answer and also raised a breach of contract counterclaim against KPG.  On October 7, 2008, HV filed a complaint against Penn National alleging breach of contract based on Penn National's breach of a guaranty provision in the real estate sale contract.  On October 31, 2008, all parties' claims were consolidated.

On July 23, 2010, the court granted KPG's motion for summary judgment and denied HV's motion for summary judgment.  Also on July 23, 2010, the court entered judgment for KPG and Penn National and against HV.  The court further ordered that KPG and Penn National shall recover their costs.  On August 17, 2010, HV appealed the court's judgment to the Tenth Circuit Court of Appeals.

On August 6, 2010, KPG and Penn National filed the instant motion.  Thereafter, the parties consulted and sought to resolve the motion, but have failed to reach an agreement.  KPG and Penn National seek to recover $1,505,683.89 in attorneys' fees and $208,091.44 in expenses.  KPG and Penn National further seek to recover $53,332.00 in attorney's fees and $6,204.68 in expenses incurred in the filing of the pleadings and documents related to the instant motion.

II.

A.

The instant motion raises two issues:  (1) whether KPG and

Penn National are entitled to recover attorneys' fees and expenses; and (2) whether their requests are reasonable.

The court begins by noting that this court retains jurisdiction to decide attorney's fees issues even though an appeal is pending. See Harris Mkt. Research v. Marshall Mktg. & Communications, Inc., 948 F.2d 1518, 1526 n. 3 (10th Cir. 1991). This is so because the Tenth Circuit has determined that such matters are procedural and ministerial functions. Id.

An award of attorney's fees in this diversity action is governed by Kansas law. King Resources Co. v. Phoenix Resources Co., 651 F.2d 1345, 1353 (10th Cir. 1981). In Kansas, a prevailing party may recover attorneys' fees if specifically authorized by statute or contract. Harris Mkt. Research, 948 F.2d at 1527. Here, KPG and Penn National assert that the real estate sale contract between the parties authorizes an award of attorney's fees and expenses.

The real estate sale contract provided as follows:

> In case a lawsuit shall be brought because of the breach or alleged breach of any agreement or obligation contained in this Contract on the part of either party to be kept or performed, the substantially prevailing party shall be entitled to recover its reasonable attorneys' fees and expenses in connection with such lawsuit.

In considering all of the issues raised by the parties, the court notes initially the award of the attorneys' fees and expenses here turns on the construction of the contract between the parties. The primary and overriding purpose of contract law is to ascertain

and give effect to the intentions of the parties. <u>Carrothers Constr. Co. v. City of South Hutchinson</u>, 288 Kan. 743, 207 P.3d 231, 239 (2009). "The law favors reasonable interpretations, and results which vitiate the purpose of the terms of the agreement to an absurdity should be avoided." <u>Johnson County Bank v. Ross</u>, 28 Kan.App.2d 8, 13 P.3d 351, 353 (2000).

B.

KPG and Penn National argue that they were the prevailing parties in this litigation and that they are entitled to reasonable attorneys' fees and expenses. HV contends that Penn National has no contractual right to the recovery of attorneys' fees because it was not a party to the real estate sale contract. HV further contends that KPG is a shell company which paid none of the fees in question and is not obligated to pay them and, therefore, has no fees or expenses to be recovered.

The argument of HV is based on the relationship between KPG and Penn National and these two cases. As the court explained in our prior order, KPG is a limited liability corporation formed for the purpose of applying for, and developing and managing, a gaming facility in Cherokee County, Kansas. Penn National is the sole member of KPG. Penn National guaranteed the performance and payment of KPG's obligations under the real estate sale contract. The guaranty prompted HV's suit against Penn National in Case No. 08-4115. KPG sued HV based on the real estate contract in Case No.

4

08-4111. The court consolidated the actions because the issues were the same, even though KPG and Penn National were technically separate parties.

HV begins by calling the court's attention to the language of the contract. HV points to the term "recover" and suggests that KPG cannot "regain" or "win back" something that it never incurred or lost. In support of its contention, HV points to two cases: SEC v. Comserv Corp., 908 F.2d 1407 (8th Cir. 1990) and United States v. 122 Acres of Land, 856 F.2d 56 (8th Cir. 1990).

The court is not persuaded by HV's argument or its legal support. Neither the particular provision nor the contract defines the term "recover." Without more, the court must look to the plain meaning of the words used. Black's Law Dictionary provides alternative definitions: "recover" may mean "[t]o get back or regain in full or in equivalence" or "[t]o obtain by a judgment or other legal process." See Black's Law Dictionary 1389 (9th ed. 2009). In the context of the contractual provision, the court is confident that recover means "to obtain by judgment or other legal process." The court finds nothing in the contractual language that indicates that attorney's fees are not available to the prevailing party if another party has paid those fees. The critical fact here is that KPG has incurred the fees even if they were paid by another entity.

Neither side has cited a Kansas state case on this issue. KPG

has noted the decision by Judge Murguia in <u>Terra Venture, Inc. v.</u>
<u>JDN Real Estate-Overland Park, L.P.</u>, 242 F.R.D. 600 (D.Kan. 2007).
In <u>Terra Venture</u>, Judge Murguia determined that defendant JDN
Overland Park, who was the prevailing party in a breach of contract
diversity action, was entitled to attorney's fees under Kansas law
based upon the provisions in the contract between the plaintiff and
JDN, even though the attorney's fees were paid by another party.
<u>Terra Venture</u>, 242 F.R.D. at 603.  Judge Murguia compared the case
to insurance litigation where an insurance company hires attorneys
and defends a case for a party, but the party still incurs the
expenses and is entitled to attorney's fees.  <u>Id</u>.

The court is certainly not persuaded by the cases relied upon
by HV.  In the two cases noted by HV, the prevailing parties sought
attorney's fees based upon federal fee-shifting statutes.  In both
instances, the courts denied fees to the prevailing parties based
upon the particular circumstances of those cases and the statutes
involved.  The court does not find that these cases provide any
support for HV's arguments here.

The court is an agreement with the arguments of KPG and the
decision of Judge Murguia in <u>Terra Venture</u>.  The court finds that
KPG is entitled to attorney's fees under the real estate sale
contract as the prevailing party regardless of who actually paid

the fees.[1]  Cases in other jurisdictions have reached the same conclusion as Judge Murguia in <u>Terra Venture</u> on this issue.  <u>See</u>, <u>e.g.</u>, <u>Menasha Forest Products Corp. v. Curry County Title Inc.</u>, 350 Or. 81, 91 (2011)(defendants are entitled to attorney's fees as prevailing parties under contract provisions even though fees were paid by another party pursuant to agency agreement); <u>Weichert Co. of Maryland, Inc. v. Faust</u>, 191 Md.App. 1, 989 A.2d 1227, 1232-33 (2010)(employee who prevailed in employment action against former employer was entitled to attorney's fees even though fees were paid by her new employer); <u>International Billing Services, Inc. v. Emigh</u>, 101 Cal.Rptr.2d 532, 84 Cal.App.4[th] 1175, 1192-95 (2000) (employees who prevailed in a suit against their former employer were entitled to attorney's fees based upon a written confidentiality agreement even though their new employer had actually paid the fees).

    In sum, the court finds that KPG is entitled to attorneys' fees in this case as the prevailing party.  The issue of who actually paid the fees is irrelevant.[2]

---

[1] For the remainder of this opinion, the court shall refer only to KPG unless required by the arguments of the parties or the facts.

[2] In connection with the instant motion, HV filed a motion for limited discovery on KPG's request for attorneys' fees.  HV sought to obtain certain information concerning what entity paid the fees sought to be recovered.  Based upon the foregoing discussion, the court shall deny this motion.  The court has determined that the issue of who paid these fees is immaterial to this matter.

III.

A.

The court shall now turn to the reasonableness of KPG's attorneys' fees request. KPG was represented in this case primarily by William D. Beil from Rouse Hendricks German May PC (Rouse Hendricks) in Kansas City, and Christopher Tayback from Quinn, Emanuel, Urquhart & Sullivan, LLP (Quinn Emanuel), in Los Angeles, California. HV was represented primarily by C. Brooks Wood from the Kansas City office of Stinson Morrison Hecker LLP, and William M. Modrcin from Johnson, Ballweg & Tuley, LC, in Overland Park.

The law firm of Quinn Emmanuel has submitted billing statements for the period between October 2008 and August 2010. These billing statements reflect a total of 3,392 hours of billable time in connection with this litigation and which KPG seeks to recover for the fees it paid. Rouse Hendricks has produced billing statements for the period from September 2008 to July 2010. These billing statements reflect a total of 981.9 hours of billable time. For sake of comparison, the law firm of Stinson Morrison Hecker LLP, who represented HV, expended 2,012.85 hours in litigating this action through July 2010.

The parties have asserted differing interpretations of how the court should review the reasonableness of KPG's request for attorneys' fees. KPG, relying on <u>Westar v. Lake</u>, 552 F.3d 1215

(10th Cir. 2009), contends that the court should only consider whether its request is unreasonable or inequitable. Thus, KPG suggests that the burden lies with HV to demonstrate that KPG's request for fees is unreasonable. In doing so, KPG contends that the court should not closely scrutinize its request, but should only determine if it is unreasonable or inequitable. HV, on the other hand, suggests that KPG has misread or misinterpreted _Lake_. HV relies upon _Westar v. Wittig_, 44 Kan.App.2d 182, 235 P.3d 515 (2010) for support. HV argues that the burden of showing that the fees requested are reasonable rests with KPG and requires an examination of the factors set forth in Kansas Rules of Professional Conduct (KRPC) 1.5(a).

The two cases noted by the parties are related. Both involved the issue of the payment of attorneys' fees for the criminal defense of former officers of Westar who were charged with crimes arising from their duties with Westar. In _Lake_, the Tenth Circuit considered whether the amount of fees sought by Lake for past and future legal representation were reasonable. The Tenth Circuit found that the Kansas Supreme Court had not determined who bears the burden of proof when a contract provides for the advancement of attorneys' fees and the payor disputes their reasonableness. The Tenth Circuit determined that it believed the Kansas Supreme Court would not apply the rule set forth in _United States ex rel. C.J.C., Inc. v. Western States Mech. Contractors, Inc._, 834 F.2d 1533 (10th

Cir. 1987). There, the Tenth Circuit had decided that, when determining contractual attorneys' fees based upon a Miller Act claim, the requested fees are to be upheld if they are not inequitable or unreasonable. <u>Western States</u>, 834 F.2d at 1549-50. The contractual agreement at issue between the parties provided that the breaching party would "pay all attorney's fees." <u>Id</u>. at 1547. The Tenth Circuit reached the aforementioned conclusion without deciding whether the federal law or the state law of New Mexico applied, but determined that the result would be the same under either one. <u>Id</u>. at 1549 n. 17. But in <u>Lake</u>, the Tenth Circuit concluded that the Kansas Supreme Court would place the burden on the party seeking the fees to justify the reasonableness of the fees by reference to KRPC 1.5(a). <u>Lake</u>, 552 F.3d at 1229. Thus, the court rejected the application of the <u>Western States</u> standard because the contractual provision for attorney's fees in its case allowed fees that were "reasonably incurred." <u>Id</u>. The Court stated: "Since the [particular contract] only provide[s] for the advancement of attorney's fees reasonably incurred, the cases interpreting contractual fee-shifting provisions with no reasonableness limitation, including <u>Western States</u>, are inapplicable." <u>Id</u>.

Subsequently, in <u>Wittig</u>, the Kansas Court of Appeals approved the analysis applied by the Tenth Circuit in <u>Lake</u>. <u>Wittig</u>, 235 P.2d at 532. The Supreme Court determined that in Kansas the burden to

10

prove the reasonableness of the fees requested is upon the party making the request, and the determination of the reasonableness of the fees arising from an agreement to pay them should be based upon the factors listed in KRPC 1.5(a). <u>Id</u>. Nevertheless, the Court found merit in the several statements contained in <u>Western States</u> including the notion that a court "should not 'simply award the full amount billed.'" <u>Id</u>. (quoting <u>Western States</u>, 834 F.2d at 1548).

This court's analysis of those two cases reveals that the argument put forth by KPG is incorrect. Since the instant contract provides for the prevailing party to recover its "reasonable" attorney's fees, then the court must apply the rulings set forth in <u>Lake</u> and <u>Wittig</u>. Nonetheless, the overall impact on this court's decision is negligible. In <u>Western States</u>, the Tenth Circuit recognized that the distinction in the standard it applied there was "subtle but important." <u>Western States</u>, 834 F.2d at 1549. In <u>Wittig</u>, the Kansas Supreme Court recognized that even <u>Western States</u> allowed the court some discretion in determining the reasonableness of the requested fee. <u>Wittig</u>, 235 P.3d at 532. As reflected in both <u>Lake</u> and <u>Wittig</u>, the burden is on the party requesting the fees to show their reasonableness. <u>Lake</u>, 552 F.3d at 1229; <u>Wittig</u>, 235 P.2d at 532. Reasonableness is determined by applying the factors set forth in KRPC 1.5(a): (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal services properly; (2) the

likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services, and (8) whether the fee is fixed or contingent. See Johnson v. Westhoff Sand Co., 281 Kan. 930, 135 P.3d 1127, 1135-36 (2006). A trial judge, based upon experience and knowledge of the legal profession, is deemed an expert on attorney's fees and may draw on that expertise in rendering an award in a particular case. Thoroughbred Associates, LLC v. Kansas City Royal Co., LLC, _____ Kan.App.2d _____, 248 P.3d 758, 774 (2011). The determination of the reasonable value of attorney's fees lies within the sound discretion of the trial court. See City of Wichita v. BG Products, Inc., 252 Kan. 367, 845 P.2d 649, 653 (1993).

The key issues here are factors 1 (the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal services properly) and 3 (the fee customarily charged in the locality for similar legal services) of KRPC 1.5(a). The parties have concluded that factors 2, 5, 6 and 8 are essentially irrelevant here, and the court agrees. HV has further acknowledged that there is no need to discuss factor 4 (the

amount involved and the results obtained) because "the amount involved in this case was certainly significant and [KPG's] attorneys obtained an excellent result for their client" or factor 7 (the experience, reputation, and ability of the lawyer or lawyers performing the services) because "all of the attorneys representing [KPG], both from Quinn Emanuel and [Rouse Hendricks], are excellent attorneys with excellent experience."

B.

The court shall initially turn to the issue of the novelty and difficulty of the questions presented. KPG has described this case as "complex" and "hotly contested." In its motion for fees, KPG points out the following:

> To prevail, [KPG] was not only required to litigate the meaning of the Sale Contract, including the interplay between several distinct contractual provisions, but also the meaning of the Kansas Expanded Lottery Act, around which the Sale Contract was structured, and the proposed management contract that [KPG] and the Kansas Lottery signed in May 2008. [KPG] was also required to develop factual support for its positions that it used "good faith commercially reasonable efforts" yet did not obtain a final management contract from the State that was "reasonably acceptable" to it. Those issues put in play in [KPG's] extensive efforts over years of time to develop a viable lottery gaming facility in Cherokee County, as well as [KPG's] internal-decision making process and investment standards and the economic viability of gaming in Kansas. Given the breadth and complexity of the issues involved and the amount at stake in the case, [KPG's] expenditure of time and labor was reasonable.

KPG has further argued that much of the time and labor expended by its attorneys was dictated by HV's "legal maneuvering." KPG

points out that HV sought extensive discovery and insisted that the parties prepare privilege logs. KPG produced over 40,000 pages of discovery to HV. Nevertheless, KPG notes that HV filed two motions to compel documents as well as a motion to reopen discovery so that it could request even more documents. KPG states it successfully opposed all of these motions.

HV has a different take on the nature of this case and the fee request made by KPG. HV contends it is unreasonable to seek fees of $1.5 million "for a case decided on summary judgment and which did not involve an extraordinary amount of discovery." HV further notes that the issue presented here "was not novel and at least from a conceptual standpoint was not difficult."

Recently, KPG suggested that HV's position on appeal further supported its position on the complexity and difficulty of this case. KPG points out that HV, in a Motion to Exceed Word Count filed in the Tenth Circuit, stated that "[t]he facts relevant to the appeal are considerably more involved than the usual case."

This case was a rather typical breach of contract case. That initial statement, however, does not indicate the intensity of the legal wrangling in this case. Given the amount at stake ($37.5 million), the parties tenaciously and forcefully litigated every issue involved. The issues were not necessarily novel, but they were difficult. The case was decided on summary judgment, but the preparation for that decision was substantial. During the period

from February to October 2009, the parties engaged in extensive document and deposition discovery. KPG produced more than 40,000 pages of documents in response to HV's requests, and HV produced more than 24,000 pages in response to KPG's requests. The parties took 21 depositions, 10 of which were noticed by KPG and 11 by HV. Eight of those depositions took place in Kansas City, six in Wyomissing, Pennsylvania (the home office of Penn National), two in Topeka, two in Reno, Nevada, one in Boston, Massachusetts, one in Portland, Maine, and one in Los Angeles. HV filed four discovery motions between August and October 2009. All were denied. On December 11, 2009, HV filed a motion to reopen discovery. Magistrate Judge Sebelius denied that motion on December 28, 2009. KPG did not file any discovery motions. The briefing in support of the parties' combined motions for summary judgment spanned 257 pages, included 284 allegedly undisputed facts, and was supported by 147 exhibits. In sum, the court is persuaded that the actions of HV made this case more complex and difficult than necessary.

## C.

Now we turn to the reasonableness of the time and labor expended by KPG in the litigation of this case. The court must begin by determining the amount of hours reasonably expended on the litigation. The burden is on the applicant to prove that the hours billed are reasonable "by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought,

all hours for which compensation is requested and how those hours were allotted to specific tasks." <u>Case v. Unified Sch. Dist. No. 233</u>, 157 F.3d 1243, 1250 (10th Cir. 1998).  An attorney may not bill to opposing counsel fees it would not be able to bill to the client. <u>Id</u>.  In determining whether hours expended are reasonable, the court considers factors such as complexity of the case, the number of reasonable strategies pursued, the responses necessitated by the maneuvering of the other side, and the potential duplication of services.  <u>Id</u>.  The court must also analyze whether the applicant has exercised "billing judgment," and it may reduce the number of hours used devoted to specific tasks if the number of hours claimed by counsel includes hours that were "unnecessary, irrelevant, and duplicative." <u>Id</u>.  When performing such an adjustment, the court need not identify and justify each disallowed hour, but need only articulate reasons for a general reduction of hours needed to arrive at a reasonable number of hours. <u>Id</u>.

HV raises a variety of complaints about KPG's claimed attorneys' fees.  HV asserts the following problems with KPG's submitted requests:  (1) "block billing" prevents an examination of the appropriate amount of time spent for a specific task; (2) failure to exercise "billing judgment" to eliminate excessive hours and duplicative work; (3) inadequate description of the work performed; (4) use of associates to perform paralegal or clerical work; and (5) travel time to and from Los Angeles should not be

16

allowed because it was unnecessary for KPG to have counsel outside the immediate area. HV also argues that the billing statements demonstrate that the KPG attorneys engaged in duplicative or excessive work. As examples, HV points to (1) the early meetings between KPG attorneys and their client representatives where several attorneys attended; (2) deposition preparation and attendance where multiple attorneys were involved on numerous occasions; (3) document review and production and preparation of privilege logs where many attorneys and other timekeepers were involved; (4) the preparation of dispositive motions which required substantial amounts of time from several attorneys; (5) expert witness preparation where several attorneys engaged in many hours of work; and (6) the use of associates to perform paralegal or clerical work. Based upon all of these alleged problems and deficiencies, HV suggests that the court should reduce the hours for which recovery is sought by one-half.

The court has undertaken a thorough examination of the records provided by KPG in support of its fee request. The court has also thoroughly considered the arguments raised by HV. The court finds that the billing statements submitted are specific and comprehensive. The court is not persuaded that the billing records are inadequate. The court further finds that the records show that KPG exercised some "billing judgment" in assessing its fees here. The various deficiencies noted by HV appear insignificant.

The court, however, finds some merit to HV's contention that KPG "overlawyered" in this case. HV notes a number of instances where several attorneys and support staff were involved in the review and production of certain documents. HV has suggested that the billing statements reflect excessive duplication on some matters. We must agree. After careful review of the billing records, the court is left with the distinct impression that parts of this case were overlawyered. As a result, the court will exercise its discretion and reduce the number of hours claimed by twenty-five (25) percent.

D.

The court must next determine a reasonable hourly rate. The court must base this on what lawyers of comparable skill and experience, practicing in a similar area of specialty, would charge for their time. <u>Case</u>, 157 F.3d at 1255. The party requesting the fees bears the burden of showing that the requested rates are in line with those prevailing in the community. <u>United Phosphorus, Ltd. v. Midland Fumigant, Inc.</u>, 205 F.3d 1219, 1234 (10th Cir. 2000). As a general rule, the court applies the fee rates of the local community even when the attorneys are seeking fees from another area. <u>Ramos v. Lamm</u>, 713 F.2d 546, 555 (10th Cir. 1983). The court must first determine whether evidence of the prevailing market rates is inadequate before it may use its own knowledge to establish the appropriate rate. <u>United Phosphorus</u>, 205 F.3d at

1234.

The affidavits before the court reflect that the Quinn Emanuel attorneys of Los Angeles gave KPG a substantial discount of 25 to 35 percent on the rates they customarily charge to their clients for similar representation. The average hourly rates charged to KPG by the two Quinn Emanuel attorneys who did the majority of the work on the case were $618.05 for partner Christopher Tayback and $299.73 for senior associate Posner. The affidavits further indicate that the "blended" average hourly rate charged by all professionals from the Quinn Emanuel firm was approximately $370. The affidavits also indicate that the Rouse Hendricks firm in Kansas City charged KPG the hourly rates they typically charge to their clients for similar representation. Those rates ranged from $180 to $430, with the majority of the work being done by partner William Biel at $400 per hour and associates Dan Hodes and Jeremy Suhr at $240 and $180 per hour, respectively. The "blended" average hourly rate for the professionals from Rouse Hendricks was $254.80. C. Brooks Wood, who did most of the work for HV, normally charges $385 per hour, but he gave HV a 15% discount, leaving an effective billing rate of $327.25. Senior associates who worked on the case billed at rates of $255, $235 and $210 per hour.

The court begins by considering the relevant community in order to determine the prevailing market rate. KPG has suggested that the court should simply find the rates charged by their counsel

reasonable in light of the following circumstances: (1) Quinn Emanuel provided KPG a substantial discount; (2) the complex nature of the case and the national scope of the parties and the issues; (3) the case was litigated primarily outside of Topeka; and (4) HV hired two Kansas City law firms to represent it. KPG has submitted an affidavit from William R. Sampson, a partner in Shook, Hardy & Bacon, LLP, who have offices in Kansas City. Mr. Sampson has provided the following guidance on the appropriate rates for the KPG attorneys:

> The rates regularly charged by lawyers in Kansas City with the skill and experience of Mr. Tayback range from $550 to over $700 per hour. The rates regularly charged in Kansas City by lawyers with the skill and experience of Mr. Beil range from $400 to $500 per hour. The rates regularly charged in Kansas City for senior associates with the experience level of Messrs. Hodes and Posner range from $240 to $350 per hour. The rates regularly charged in Kansas for junior associates with the experience level of Mr. Suhr range from $180 to $275 per hour. The rates regularly charged for paralegal work by firms in Kansas City handling complex commercial cases range from $125 to $175.

Mr. Sampson has opined that the rates charged by the attorneys involved in this case were "reasonable and comparable to those charged by others in the Kansas City area with similar expertise and experience."

HV suggests initially that the relevant community in this case should be Topeka. HV contends that the "blended rate" of $370 sought by KPG for the Quinn Emanuel attorneys is "higher than that allowed for any attorney in any case in the District of Kansas

which counsel for HV Properties has seen, but here it is an effective rate for *all* timekeepers, including law clerks, litigation support personnel, paralegals and documents clerks." (emphasis in original). HV notes that a recent Kansas Bar Association publication indicates that in 2005, the median hourly rate in Topeka was $150 per hour with the 75th percentile being $175 per hour and the 95th percentile being $231 per hour. The corresponding figures for Kansas City, Kansas were $175, $200 and $329 while the figures for Kansas City, Missouri were $190, $225, and $307. HV points to prior hourly rates approved by this court in Topeka of $121 to $200 and rates approved in Kansas City of $180 to $315. HV asserts that Mr. Sampson has failed to provide any specific basis for his opinions.

The court finds that the relevant community here is Topeka. The court is not persuaded that this case involved an area of law so intricate and complex that local counsel could not have handled it competently. This case was simply a breach of contract action. The collateral issues involving the gaming industry provided some complexity, but not so much that local counsel could not have ably litigated them. Courts in Kansas have granted fees in excess of the local rates where the cases involved "specialized skills in a narrow area of law, such as admiralty law, patent law, or antitrust and other complex litigation." Reazin v. Blue Cross & Blue Shield of Kan., Inc., 663 F.Supp. 1360, 1454 (D.Kan. 1987). The court is not

21

convinced that the legal or factual issues in this case required the services of attorneys outside this forum, even though both sides chose to hire Kansas City counsel.

The parties have not provided the court with much information on the rates of comparable counsel in Topeka. HV has provided some figures from a 2005 KBA study of median hourly billing rates. The court does not intend to place much reliance upon this study, primarily due to its age. The court has also considered the rates that other judges have imposed in the District of Kansas. While the evidence of specific rates in Topeka is limited, the rates provided in Kansas City and Wichita do provide some guidance. The court is well aware that over the years Topeka has consistently lagged behind Kansas City and Wichita in hourly rates. The court has found only two cases from Topeka in recent years that have awarded attorney's fees. See Brockmann v. Board of County Com'rs of County of Shawnee, 2009 WL 1095453 at * 3 (D.Kan. 2009)(Judge Melgren found that an hourly rate of $190 for an experienced lawyer in Topeka was appropriate in insurance action where fees were awarded for discovery violations); Meyer v. Nava, 2008 WL 58819 at * 2 (D.Kan. 2008)(this court approved an hourly rate of $200 for the Topeka community in a civil rights action involving experienced counsel). Recent awards for Kansas City and Wichita are substantially higher. See Hayne v. Green Ford Sales, Inc., 2010 WL 2653410 at * 6 (D.Kan. 2010)(Judge Lungstrum applied the following hourly rates to the

Kansas City market in an action alleging fraud, breach of implied warranty of merchantability and violation of the Kansas Consumer Protection Act: $300 for a trial lawyer with 34 years experience; $180 for less experienced associate attorneys; and $95 for paralegals); <u>Ice Corp. v. Hamilton Sundstrand Corp.</u>, 2010 WL 4683981 at *4-5 (D.Kan. 2010)(Judge Robinson used the following hourly rates for the Kansas City market in a case involving misappropriation of trade secrets: $300 for equity shareholder and named principal with 28 years of experience; $250 for equity shareholder with 16 years of experience; $185 for associate with 7 years of experience; and $85 and $80 for legal assistants); <u>University of Kansas v. Sinks</u>, 2009 WL 3191707 at * 12-13 (D.Kan. 2009)(Judge Robinson found the following rates for the Kansas City market in a trademark infringement action: $315 to $300 for partners with considerable experience; $150 to $210 for associates depending upon each attorney's experience; and $75 for legal assistants); <u>Bell v. Turner Recreation Com'n</u>, 2010 WL 126189 at * 7 (D.Kan. 2010)(Judge Lungstrum approved an hourly rate of $250 in Kansas City in an employment discrimination action for an attorney who had 30 years of experience); <u>The Paradigm Alliance, Inc. v. Celeritas Technologies, LLC</u>, 2011 WL 251452 at * 5 (D.Kan. 2011)(Judge Melgren applied the following rates to the Wichita market in a breach of contract action that was described as "complex and contentious": $300 for a senior partner (which was increased by 30% pursuant to

the factors of KPPC 1.5(a)); $200 for a junior partner; $175 for a senior associate (which was increased by 25% pursuant to KRPC 1.5(a)); and $95 for a legal assistant).

Having carefully considered the evidence before the court and the court's own familiarity with the relevant rates in this community, this court shall allow the following hourly rates: $325 per hour for the partners; $200 for the associates; $125 for the law clerks; and $100 for the paralegals and other support staff. The court believes that these figures represent the top end of the hourly rates in Topeka. The court has chosen the top of the rates due to the experience of the counsel in this case for KPG and the quality of their representation. The court fails to find that KPG has presented the total number of hours for each attorney in this case. In such a case, the court shall simply apply a "blended rate" to the total hours noted by the attorneys for KPG. With the application of the aforementioned figures, the court believes that a "blended rate" of $225 is appropriate here. The court shall multiply 3,280.42 hours by $225 per hour for a total of $738,094.50.

IV.

KPG also seeks to recover the attorney's fees of $53,332.00 incurred primarily for the preparation of the instant motion. KPG, relying on a Tenth Circuit case, contends that it is entitled to recover these fees. HV argues that KPG is not entitled to recover these fees because no mention is made of them in the real estate

24

sale contract.

Neither party has cited to a Kansas case where this issue is discussed or decided. In the absence of any limitation contained in the contractual language allowing attorney's fees, the court believes that Kansas would follow the general rule that such an award of attorney's fees includes compensation for work performed in preparing and presenting the fee application. See, e.g., Case, 157 F.3d at 1254("An award of reasonable attorney's fees may include compensation for work performed in preparing and presenting the fee application.") (citation omitted); Johnson, 135 P.3d at 1143(under Kansas statute, attorney fees incurred litigating the amount of attorney fees to be awarded are recoverable). The contract here provided that the prevailing party was entitled to attorney's fees. The court finds this language broad enough to include attorney's fees incurred by the prevailing party to establish its fee claim. When attorney's fees are authorized by contract, the reasonable expenses of preparing an application for fees should be included in the award.

HV makes similar arguments concerning the reasonableness of KPG's request for "fees on fees." HV suggests that the billing statements again show duplication of research and writing. HV further argues again the hourly rates charged are not reasonable for either the Kansas City or Topeka communities.

The court has again carefully reviewed the billing statements

in support of this request. The court does not find as much duplication of effort here as in the billing statements that were submitted in support of the original request for attorneys' fees. Thus, the court shall only reduce this request by twenty (20) percent. The court shall again apply the "blended rate" of $225 to remain consistent. This results in an attorney fee award of $26,964 (119.84 hrs. x $225).

V.

Finally, KPG contends it is entitled to recover its reasonable expenses incurred in connection with this case. KPG seeks to recover $208,091.44 in expenses. Those expenses include charges for court reporters and videographers at depositions, payments to expert witnesses, legal research, travel, filing fees and photocopying. KPG also seeks expenses in the amount of $6,204.68 that were incurred in filing the instant motion.

HV contends that travel costs including hotel and meal expenses and on-line research charges should be disallowed as unreasonable and unnecessary. HV further argues that the cost of the mediator should be denied because the parties agreed to split the cost of the fee paid to the mediator. HV also objects to the fees paid to expert witnesses Wilson, Eadington, Christianson Capital Advisors and Wells Gaming Research. HV suggests that these should be disallowed because they are "fees," not expenses. HV further argues that these fees should be denied because those witnesses were "paid

to prepare for and consult with Penn's attorneys prior to their depositions." HV further objects to the expert witness fee of Wilson because it was assessed at a rate of $890 per hour, which it contends is unreasonable. HV notes that the magistrate has rejected this argument, but contends that this court is not bound by the magistrate's ruling. Finally, HV contends that the amount of $2,250 paid to Schulze Haynes Loevenguth & Co. should be disallowed because KPG has not explained what this item is, how it relates to the case, or why it is reasonable or necessary. HV has also suggested that the expenses incurred for the preparation of the instant motion are excessive. HV asserts in particular that the travel expenses should not be allowed and again argues that the on-line research charges should be denied.

Generally, the court finds no merit to most of the arguments raised by HV in response to KPG's request for expenses. The court notes that HV has failed to provide any legal support for its contentions that most of these requested expenses should not be allowed. The court further notes that the contract signed by the parties clearly provided for reasonable expenses. Most of these expenses have been allowed in other cases, and this court sees no need to deny them here. See The Paradigm Alliance, 2011 WL 251452 at * 6(expenses awarded for computer research, deposition expenses, expert expenses, and hotel fees); Wirtz v. Kansas Farm Bureau Services, Inc., 355 F.Supp.2d at 1190, 1207-09 (D.Kan. 2005)

27

(awarding expenses for deposition-related costs and noting that travel expenses may be awarded to the prevailing party); <u>Reazin</u>, 663 F.Supp. at 1457(awarding expenses related to photocopying, telephone charges, computerized legal research, and travel expenses).

The court shall deny KPG's request for the monies paid to a mediator. KPG has not denied that it agreed to split this cost with HV. Given this agreement, the court shall not allow KPG to now recover this cost as an expense. In addition, the court specifically finds no merit to HV's contention that the payment made to expert witness Wilson was unreasonable. HV raised this issue before the magistrate and he rejected it. Thereafter, HV failed to appeal that ruling to this court. Failure to appeal a magistrate judge's order on a nondispositive matter to the district court waives the claim that the magistrate erred. Fed.R.Civ.P. 72(a); <u>Nicks v. Brewer</u>, 2010 WL 4873647 at *1 (D.Kan. 2010). Even if the court were to consider this argument, we would reject it because we believe that the magistrate correctly determined that the rate sought by the expert witness was reasonable.

Finally, the court shall generally allow the travel expenses sought by KPG. Considerable travel occurred in this case due to the fact that parties and witnesses were located all over the country. Depositions were taken in a variety of places. HV has not specifically pointed the court to examples where the travel was unnecessary or unreasonable. Even if KPG had hired local counsel,

those attorneys would have been required to travel extensively.  The court shall not, however, allow the travel expenses that were claimed for the preparation of the instant motion.  KPG has failed to set forth any reason for this travel, and the court cannot discern any valid basis for it.  Accordingly, the court will subtract $1,643.85 from the amount sought by KPG.

The court shall award expenses to KPG in the amount of $207,652.27.

VI.

In sum, the court shall award attorneys' fees to KPG in the amount of $765,058.50 and expenses in the amount of $207,652.27.  The court finds that these amounts are reasonable.  To the extent that Kansas law allows for any adjustment of the award of attorneys' fees, the court shall decline to adjust the amount upward or downward.

**IT IS THEREFORE ORDERED** that the motion of HV Properties of Kansas LLC for limited discovery relating to Penn parties' request for attorneys' fees (Doc. # 160) be hereby denied.

**IT IS THEREFORE ORDERED** that the motion of Penn National Gaming, Inc. and Kansas Penn Gaming, LLC for attorneys' fees and expenses (Doc. # 144) be hereby granted in part and denied in part.  The court shall award attorneys' fees to these parties in the amount of $765,058.50 and expenses in the amount of $207,652.27.

**IT IS SO ORDERED.**

Dated this 18th day of May, 2011 at Topeka, Kansas.

s/Richard D. Rogers
United States District Judge